IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| NORMAN JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: |
| ) | |
| SPECIALTY PROMOTIONS, INC. ) | |
| d/b/a SPECIALTY PRINTING ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

NOW COMES, Plaintiff, NORMAN JONES, (hereinafter "Plaintiff" or "Jones"), by and through his attorneys, Seth R. Halpern and Meredith W. Buckley of Malkinson & Halpern, P.C., for his Complaint against Defendant, SPECIALTY PROMOTIONS, INC., d/b/a SPECIALTY PRINTING COMPANY (hereinafter "SPC" or "Defendant"), states as follows:

### PARTIES AND JURISDICTON

1. Plaintiff, NORMAN JONES, is a citizen of the State of Illinois and a resident of Cook County, City of Chicago.

2. Defendant, SPECIALTY PROMOTIONS, INC., d/b/a SPECIALTY PRINTING COMPANY, is a Texas corporation that is registered and doing business in Illinois, as a commercial printing, direct mail and direct marketing corporation operated from its facility located at 6019 W. Howard Street, Niles, Illinois.

3. Plaintiff was formerly employed with SPC from approximately January 29, 2018, up through his termination on August 20, 2020.

4. Plaintiff is African-American.

5. Defendant, SPC, for the purpose of Plaintiff's claim and at all relevant times herein, was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b), and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

6. Plaintiff, for the purposes of his claims and at all relevant times herein, was an employee within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(f) and the Illinois Human Rights Act, 775 ILCS 5/2-101 *et seq.*

7. This is an individual action brought by Plaintiff against Defendant for claims of unlawful race discrimination, retaliation, and unlawful termination in violation of Title VII of the Civil Rights Act, as amended, 42 U.S.C. 2000e *et seq.* and in violation of the Illinois Human Rights Act 775 ILCS 5/2-101 *et seq.*

8. This Court has jurisdiction of this case pursuant to 42 U.S.C. § 2000e *et* seq, as amended.

9. This Court has supplemental jurisdiction over Plaintiff's Illinois state law claims pursuant to 28 U.S.C. § 1367.

10. This action properly lies in this district pursuant to 28 U.S.C. § 1391 because the claims arose in this judicial district.

11. Plaintiff has complied with all administrative prerequisites by timely filing Charges of Discrimination with the Illinois Department of Human Rights (IDHR) for race discrimination, retaliation and unlawful termination, which were cross-filed with the U.S. Equal Employment Opportunity Commission (EEOC).

12. Plaintiff received the Notice of Substantial Evidence and Notice of Dismissal on or shortly after June 14, 2022, from the IDHR. Accordingly, this is a timely filed Complaint.

**FACTUAL ALLEGATIONS**

13.     On or about January 29, 2018, Plaintiff was hired by Defendant to work as a Feeder at its commercial printing facility in Niles, Illinois.

14.     Throughout his employment, Plaintiff performed his job duties satisfactorily and met Defendant's reasonable business expectations.

15.     Beginning shortly after he was hired, Plaintiff was subjected to repeated and continuous derogatory comments about his race, Black/African-American, initially by various Caucasian co-workers and supervisors, including two First Pressmen and a Paper Inventory Manager.  These comments included but were not limited to:

   a.     being frequently referred to as "nigger", "nigga" or "my nigger"; and

   b.     comments made about the size of his penis while using the restroom.

16.     In addition to the derogatory comments made to Plaintiff about his race, Plaintiff would routinely hear these same Caucasian co-workers and supervisors make racially derogatory comments about Hispanic employees, including referring to such employees as "wetbacks" and "spics".

17.     These, and other Caucasian co-workers and supervisors, routinely engaged in racially insensitive discussions, made inflammatory comments about African-American and Hispanic individuals and spoke in a condescending and insulting manner to non-Caucasian employees, including but not limited to Plaintiff.

18.     Initially, Plaintiff would tell his harassing co-workers and supervisors to stop referring to him as "nigger" or "my nigga" but his complaints were dismissed and mocked.

19.     Plaintiff complained to Pressroom Supervisor, Joe Olson, in or about August 2019, about the repeated racial harassment, including specifically about being called "nigger" and

"nigga" by various co-workers. No effective remedial action was taken in response to his complaints and his co-workers continued to refer to him as "nigger" and "nigga" and they continued to make inflammatory, derogatory and racially charged comments within the work environment and in Plaintiff's presence on a routine basis.

20. In early June 2020, following several days of protests and civil arrests in Chicago in response to the murder of George Floyd in Minnesota, co-workers and supervisors made numerous racially derogatory and inflammatory comments to Plaintiff that included but were not limited to:

   a. asking Plaintiff if he was "looting and robbing and stealing" while he was off work;

   b. co-workers asking Plaintiff if he was selling stolen contraband from looting because they had been told he was selling stolen shoes and cigarettes;

   c. asking Plaintiff if he was "looting" chemicals from the commercial printing facility; and

   d. asking Plaintiff if his African-American co-workers were selling contraband that they "looted and stole".

21. Around this time and before, Plaintiff's Pressroom Manager, made repeated comments that "Black Lives Matter" was a "sham" and "bullshit."

22. That same Pressroom Manager, around this time, also told Plaintiff that if he was tardy one more time, he would take him out back and "flog him" implying slavery-style punishment.

23. In early June 2020, Plaintiff again complained to his Pressroom Supervisor Joe Olson, Pressroom Manager Frank Piper and Director of Manufacturing Jim Krueger, about the racially derogatory comments made to him by various co-workers and supervisors surrounding the civil unrest that followed the murder of George Floyd. Manager Piper responded that he "knew

about the comments" but told Plaintiff to "not say anything more to anyone" (which would have implied Human Resources representatives) and that he would take care of it.

24. Despite being told by Manager Piper to not report the racial discrimination to Human Resources, on or about June 5, 2020, Plaintiff reported the racially derogatory comments to Sharon Murphy, Human Resources Manager.

25. After Plaintiff complained to HR Manager Murphy, Manager Piper asked Plaintiff why he talked to HR when he was told not to do so. It was clear from their interaction that Manager Piper was frustrated with Plaintiff and his actions.

26. Following Plaintiff's report to HR Manager Murphy, one of the First Pressmen who had made the aforementioned racial remarks was terminated.

27. In July 2020, and immediately following Defendant's investigation into Plaintiff's complaints of race discrimination and harassment, out of eleven Feeders, Plaintiff was assigned the third-fewest hours, and fewer hours, on average, than he had been working.

28. On July 17, 2020, Plaintiff received a written corrective action final warning, for calling off of a tentatively scheduled Sunday shift.

29. On August 18, 2020, Plaintiff received text messages from an unknown phone number accusing Plaintiff of giving illicit drugs to the texter's husband. Plaintiff responded via text to this unknown individual that he did not provide drugs to anyone, that he did not know what they were talking about and that they had to have the wrong number.

30. On August 19, 2020, Plaintiff received a text message from this same unknown phone number and this unknown individual apologized and confirmed that the individual had the wrong person and was mistaken about the accusations of drug dealing directed at Plaintiff.

5

31. On August 21, 2020, Defendant terminated Plaintiff allegedly based on a false accusation that Plaintiff had provided illicit drugs to a co-worker.

32. On August 24, 2020, Plaintiff, through counsel, provided Defendant with the text messages that indicated that Plaintiff was mistakenly and falsely accused of providing drugs to a co-worker.

33. Plaintiff, through counsel, additionally demanded Plaintiff be returned to work and complained that, given that the drug dealing accusation was admitted to be mistaken and false, his termination was retaliatory and discriminatory based upon his race and complaints of racial discrimination. Said accusation was merely pretext for said discrimination/retaliation.

34. Defendant refused to return Plaintiff to work.

### COUNT I
### Discrimination/Hostile Work Environment
### (Title VII and IHRA)

35. Plaintiff repeats and re-alleges paragraphs 1-34 as if fully written as Paragraph 35.

36. The racially derogatory, inflammatory and discriminatory conduct and behavior, alleged herein, occurred within the work environment that was controlled and managed by Defendant and included but was not limited to:

   a. co-workers and supervisors using the word "nigger" in Plaintiff's presence;

   b. co-workers and supervisors calling Plaintiff "nigger", "nigga" and "my nigger";

   c. co-workers making comments about the size of Plaintiff's penis while they were in the bathroom together on several occasions;

   d. co-workers and supervisors referring to Hispanic employees as "wet backs" and "spics";

   e. co-workers and supervisors making numerous and repeated racially inflammatory and derogatory comments about African-Americans;

  f. co-workers and supervisors accusing Plaintiff and other African-American co-workers of "looting, robbing and stealing";

  g. supervisor telling Plaintiff that "Black Lives Matter" is a "sham" and "bullshit";

  h. supervisor telling Plaintiff that he will be taken out back and "flogged";

  i. supervisors accusing Plaintiff of selling drugs despite an admission that he was mistakenly and falsely accused;

  j. subjecting Plaintiff to harsher and more strict work-related discipline and scrutiny than his non-African-American co-workers;

  k. accusing Plaintiff of selling drugs, despite such accusations being false and based on mistaken identity; and

  l. terminating and failing to restore Plaintiff to his job based on knowingly false accusations of selling and distributing drugs.

37. The racially derogatory, inflammatory and discriminatory conduct and behavior was perpetrated by Plaintiff's co-workers without punishment or any effective remedial action despite several complaints by Plaintiff.

38. Plaintiff's supervisors participated in, acquiesced to, and did not prohibit such unlawful racial discrimination and harassment throughout Plaintiff's work environment and during his tenure.

39. As a result of Defendant's actions, and lack of remedial actions, as alleged herein, Plaintiff was forced to work in an environment that was harassing, discriminatory and fraught with racial tension. Accordingly, Plaintiff found it difficult to perform his job duties and was constantly under stress and mental anguish during his employment with Defendant.

40. Defendant's course of conduct showed a disregard for Plaintiff's right to have an employment environment that is free from racial discrimination and harassment.

41. As a result of Defendant's unlawful employment practices complained of herein, Plaintiff suffered and continues to suffer from severe emotional distress, mental anguish, humiliation and stress.

WHEREFORE, Plaintiff, NORMAN JONES, respectfully prays that this Court enter an order in his favor and against Defendant, SPECIALTY PROMOTIONS, INC:

(a) Declaring the conduct of Defendant SPECIALTY PROMOTIONS, INC. and its agents/employees, in violation of the Illinois Human Rights Act and/or Title VII of the Civil Rights, as amended;

(b) Awarding Plaintiff compensatory damages;

(c) Awarding Plaintiff lost wages and benefits;

(d) Awarding Plaintiff damages of related emotional distress;

(e) Awarding Plaintiff punitive damages, to the extent allowable under law;

(f) Awarding Plaintiff pre and post-judgment interest to the extent allowable under law;

(g) Awarding Plaintiff reasonable attorney's fees and costs; and

(h) Any other lawful relief deemed just and proper.

## COUNT II
### Retaliation
### (Title VII and IHRA)

42. Plaintiff repeats and re-alleges paragraphs 1-34 as if fully written as Paragraph 42.

43. Throughout his employment, Plaintiff would express his disapproval directly to the co-workers and supervisors that engaged in the repeated racial discrimination and harassment that was allowed to exist within Defendant's work environment.

44. On several occasions, including on or around August 2019, and in June of 2020, Plaintiff complained to management about racial discrimination and harassment.

45. In response to Plaintiff's protected complaints of what he believed in good faith to be unlawful racial discrimination and harassment, Defendant responded with retaliation that included but is not limited to:

   a. expressing disapproval, frustration and annoyance with Plaintiff's acknowledged complaints;

   b. reducing Plaintiff's scheduled work hours;

   c. subjecting Plaintiff to harsher and more strict work-related discipline and scrutiny than he was previously subjected to;

   d. terminating Plaintiff; and

   e. failing to restore Plaintiff to his job after the accusations that were the grounds of his termination were shown to be false and mistaken.

46. Defendant took these actions, including terminating Plaintiff, in retaliation for his protected activities of complaining about racial discrimination and harassment.

47. As a result of Defendant's unlawful retaliation, Plaintiff has suffered lost wages and benefits and has suffered related severe emotional distress, mental anguish, humiliation and stress.

WHEREFORE, Plaintiff, NORMAN JONES, respectfully prays that this Court enter an order in his favor and against Defendant, SPECIALTY PROMOTIONS, INC:

   (a) Declaring the conduct of Defendant SPECIALTY PROMOTIONS, INC. and its agents/employees, in violation of Illinois Human Rights Act and/or Title VII of the Civil Rights, as amended;

   (b) Awarding Plaintiff compensatory damages;

   (c) Awarding Plaintiff lost wages and benefits;

   (d) Awarding Plaintiff damages of related emotional distress;

   (e) Awarding Plaintiff punitive damages, to the extent allowable under law;

(f) Awarding Plaintiff pre and post judgment interest to the extent allowable under law;

(g) Awarding Plaintiff reasonable attorney's fees and costs; and

(h) Any other lawful relief deemed just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

DATED: August 2, 2022

                                              Respectfully Submitted,

                                              Meredith W. Buckley

Seth R. Halpern
Meredith W. Buckley
MALKINSON & HALPERN, P.C.
33 N. Dearborn Street, Suite 1540
Chicago, Illinois 60602
(312) 427-9600
shalpern@mhtriallaw.com
mbuckley@mhtriallaw.com